UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM B. LOGAN JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19-cv-1875 |
| v. | ) |
| | ) Judge Marvin E. Aspen |
| B H 92 TRUCKING, INC., AP EXPRESS | ) |
| SERVICES, INC., and ALEN POSKOVIC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant B H 92 Trucking, Inc.'s ("B H 92") Motion for Summary Judgment. (Defendant, B H 92 Trucking, Inc.'s Motion for Summary Judgment and Supporting Memorandum of Law ("Motion") (Dkt. No. 89).)[1] For the reasons set forth below, we grant B H 92's Motion.

**FACTUAL BACKGROUND**

The facts outlined below are taken from the parties' Local Rule 56.1 statements, responses, and the materials cited therein, and are undisputed unless otherwise noted.

Plaintiff William B. Logan, Jr. brings this action as the Trustee of Dorissha Tinnon's bankruptcy estate. (Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts ("Pltf. Resp. SOF") (Dkt. No. 93) ¶ 1.) Tinnon allegedly began working jointly for Defendants B H 92 and AP Express Services, Inc. ("AP Express") in August 2017 as a CDL truck driver. (Complaint ("Compl.") (Dkt. No. 1) ¶¶ 9, 14.) B H 92 is "a licensed and bonded freight shipping

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

and trucking company" headquartered in Bolingbrook, Illinois. (Pltf. Resp. SOF ¶ 5.) B H 92 contracts with owner/operators to pick up and deliver freight. (*Id.*) One such owner/operator was AP Express—a separate corporation owned by Alen Poskovic. (*Id.* ¶ 7.) B H 92 and AP Express operate pursuant to a written lease agreement (the "Lease"). (*Id.*) AP Express and Poskovic have no connection to B H 92, other than through the Lease. (*Id.*) B H 92 asserts that AP Express was Tinnon's sole employer (Defendant B H 92 Trucking, Inc.'s Statement of Material Facts ("B H 92 SOF") (Dkt. No. 90) ¶¶ 7–14), but Tinnon claims that both AP Express and B H 92 were her employers (Pltf. Resp. SOF ¶ 9; Compl. ¶¶ 9, 14).

Tinnon never had an employment agreement with AP Express. (Plaintiff's Rule 56.1(c)(2) Statement of *Additional* Facts ("Pltf. SOAF") (Dkt. No. 94) ¶ 27.)[2] However, AP Express paid Tinnon's wages and benefits, and all of Tinnon's pay stubs identified AP Express as the payee. (Pltf. Resp. SOF ¶ 10.)

Tinnon testified that she learned about B H 92 via a Craigslist ad. (Deposition Transcript of Dorissha Tinnon ("Tinnon Tr.") (Dkt. No. 94-1) at 22:5–6.)[3] According to Tinnon, the ad stated that B H 92 was hiring "company drivers," set forth compensation rate and other basic terms of employment, and explained how job seekers could apply for the positions. (Pltf. SOAF

---

[2] B H 92 did not file a response to Plaintiff's Rule 56.1(c)(2) Statement of *Additional* Facts as required by the Local Rules. *See* Local Rule 56.1(c)(2). When a movant fails to respond to the opposing party's statement of additional facts, those facts are deemed admitted. *See Magee v. McDonald's Corp.*, Case No. 16-CV-5652, 2019 WL 10447014, at *3 (N.D. Ill. Mar. 28, 2019); *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 838 (N.D. Ill. 2002). Accordingly, we treat the facts in Plaintiff's Rule 56.1(c)(2) Statement of *Additional* Facts as undisputed.

[3] B H 92 contends that we should not consider the ad and Tinnon's testimony regarding the ad because Plaintiff has not provided us with the ad, laid foundation for the ad, authenticated the ad, or explained why the ad is not hearsay. (Defendant, B H 92 Trucking, Inc.'s Reply in Support of Its Motion for Summary Judgment ("Reply") ("Dkt. No. 95) at 1–2.) Our analysis does not turn on the ad, however, and we include allegations concerning its contents for context only.

¶ 2; Tinnon Tr. at 22:7–13.) Tinnon claims that she contacted two numbers listed in the ad and received additional information about the position. (Pltf. SOAF ¶ 3; Tinnon Tr. at 22:22–24:8.) Someone then sent Tinnon a ticket to fly from her home in Ohio to Illinois to complete the application process. (Pltf. SOAF ¶¶ 4–5; Tinnon Tr. at 24:19–25:15.)

In August 2017, Tinnon traveled to B H 92's office in Bolingbrook, Illinois. (Pltf. Resp. SOF ¶ 9; Tinnon Tr. at 26:17–27:5; Pltf. SOAF ¶ 5; Deposition of Kemal Hamulic ("Hamulic Tr.") (Dkt. No. 94-3) at 23:21–24:3.) There, she completed an application and various other paperwork, including a document entitled "Qualification Proposal for Independent Contract Driver." (Hamulic Tr. at 23:21–24:24; Affidavit of Kemal Hamulic ("Hamulic Affidavit") (Dkt. No. 90-1) ¶ 11, Ex. 2 (B H 92 – 000053); Pltf. Resp. SOF ¶ 17.) The document identifies Tinnon as a "Contractor," lists "B H 92 Trucking, Inc." as the "Company," and makes no mention of AP Express. (Hamulic Affidavit at Ex. 2.) Tinnon's background check, drug test, and orientation were all done through B H 92. (Pltf. SOAF ¶¶ 6, 7; Hamulic Tr. at 28:3–19.)

After completing those tasks, someone at B H 92 advised Tinnon that B H 92 was trying to find her a truck and would pay for her to stay in a hotel that night. (Pltf. SOAF ¶ 8; Tinnon Tr. at 29:6–11.) The following day, Tinnon received a call from Poskovic, advising Tinnon that he had a new truck for her. (Tinnon Tr. at 29:18–30:7.) B H 92 employee Kemal Hamulic also texted Tinnon that he had confirmed the arrangement. (*Id.* at 29:18–30:3.) Tinnon agreed to drive Poskovic's truck, though she claims she did not know the truck was Poskovic's at the time. (*Id.* at 30:11–18.) Tinnon continued to drive Poskovic's truck exclusively during the relevant period. (Pltf. Resp. SOF ¶ 11.)

A driver named Jamie brought the vehicle to Tinnon, and the two women drove back to Ohio together. (Pltf. SOAF ¶ 9; Tinnon Tr. at 30:19–32:16.) The following day, B H 92

3

dispatch directed Tinnon to pick up a load with the truck. (Pltf. SOAF ¶ 10; Tinnon Tr. at 32:14–23.) B H 92 dispatch likewise directed Tinnon to pick up all of her subsequent loads. (Pltf. SOAF ¶ 28; Tinnon Tr. at 38:9–13.)

Tinnon's truck broke down on multiple occasions. (Pltf. SOAF ¶ 29.) The timing of these events is unclear, but as far as we can tell, they occurred in the following sequence, sometime during August and September 2017. (*See* Pltf. SOAF ¶ 1 (plaintiff began work in August 2017); Pltf. Resp. SOF ¶ 2 (plaintiff was terminated in September 2017).)

While traveling through Virginia, Tinnon had an issue with her truck's "regen," the process by which the truck's diesel particulate filter is cleaned or "regenerated." (Tinnon Tr. at 38:17–39:17); *see Lockhart Civil v. Republic Servs., Inc.*, Civil Action No. SA-18-CA-766-XR, 2020 WL 2308438, at *5 (W.D. Tex. May 8, 2020) (describing the term "regen"); *Barnette v. City of Charlotte*, Civil Action No. 3:11-CV-653-DCK, 2013 WL 170430, at *2 (W.D.N.C. Jan. 16, 2013) (same). A regen failure may trigger an engine shutdown or cause other damage to the truck. *See Lockhart*, 2020 WL 2308438, at *5; *Barnette*, 2013 WL 170430, at *2. Tinnon contacted both B H 92 and Poskovic regarding the problem. (Tinnon Tr. at 40:16–18.) Poskovic responded first and directed Tinnon to take the truck to a repair shop. (*Id*. at 41:1–23.) Hamulic contacted her later and asked her if she had spoken with Poskovic. (*Id*. at 41:12–23.) She had. (*Id*. at 41:21–23.)

On a subsequent trip to Memphis, the truck's batteries died. (*Id.* at 42:15–18.) Poskovic instructed Tinnon to restart the batteries using jumper cables, and that cured the problem. (*Id*. at 42:19–43:6.)

A couple of days later, the truck would not produce heat or air conditioning at night due to an issue with the regen. (*Id.* at 43:10–22.) Poskovic directed Tinnon to disconnect the speed

sensor. (*Id*. at 44:1–4; Pltf. SOAF ¶ 31.) Tinnon could not figure out how to do that, so she kept driving without doing so. (Tinnon Tr. at 44:5–18.)

Thereafter, Tinnon returned to Memphis and again had trouble with the truck's regen. (*Id*. at 44:22–45:2.) Tinnon emailed B H 92 dispatch and called both Hamulic and Poskovic for assistance. (*Id*. at 45:3–8.) Hamulic directed Tinnon to speak with Poskovic, purportedly because Hamulic only dealt with safety and the hiring process. (*Id*. at 45:7–12; Pltf. SOAF ¶ 30.) When Tinnon and Poskovic spoke, Poskovic again directed Tinnon to disable the speed sensor. (Tinnon Tr. at 45:13–15; Pltf. SOAF ¶ 31.) Tinnon told Poskovic that she was uncomfortable doing that, so Poskovic sent someone to disconnect the speed sensor for her. (Tinnon Tr. at 45:15–19; Pltf. SOAF ¶ 31.) That did not resolve the problem. (Tinnon Tr. at 45:20–46:2.) Tinnon contacted B H 92 dispatch again and told them that the truck was still malfunctioning and that she was running low on hours. (*Id*. at 45:22–46:2.) She also texted Poskovic. (*Id*. at 46:3–4.) Poskovic called her back and insisted that the truck should be drivable. (*Id*. at 46:3–7.) Tinnon maintained that the truck had not been fixed, told Poskovic that she could not tell how fast she was going, and expressed concern that she did not know if it was "legal to drive like this." (*Id*. at 46:7–13; Pltf. SOAF ¶ 32.)

According to Tinnon, Poskovic proceeded to pressure her into picking up the load, arguing that the brokers would be mad if that were not done. (Tinnon Tr. at 46:14–18.) Tinnon pointed out that she was almost out of hours and would be passing a weigh station. (*Id*. at 46:18–47:2.) She expressed concern that she might lose her license if she were pulled over. (*Id*. at 47:2–4.) Nonetheless, Poskovic insisted that she either pick up the load or she would be fired. (*Id*. at 47:5–13; Pltf. SOAF ¶ 34.) Tinnon elected to park the truck for the night and sent B H 92

5

dispatch and Poskovic a message, informing them that she could not pick up the load due to safety issues. (Tinnon Tr. at 47:14–48:6.)

The next morning, Poskovic apologized to Tinnon. (*Id*. at 48:23–49:3; Pltf. SOAF ¶ 35.) Poskovic told Tinnon that if she still wanted to work for the company, she could bring the truck back to be fixed. (Tinnon Tr. at 49:3–8.) Tinnon thereafter drove the truck back to Illinois, where she attempted to repair the truck in the manner directed by Poskovic. (*Id*. at 49:15–50:3.) However, after visits to multiple repair shops, she was unable to do so. (*See id*. at 50:3–20.) Poskovic met Tinnon at the second repair shop she visited and told her that she was fired. (*Id*. at 51:3–8; Pltf. SOAF ¶ 35.)

Tinnon contacted Hamulic about the situation. (Tinnon Tr. at 51:15–22; Hamulic Tr. at 68:6–17.) Hamulic said that he would speak with Poskovic, but Tinnon claims that she never heard from Hamulic again. (Tinnon Tr. at 51:22–24.) Hamulic thinks that he contacted Tinnon but that she told him that her attorney had instructed her not to talk to him. (Hamulic Tr. at 68:18–25.) Within a week or so, Poskovic contacted Tinnon to tell her that he was taking money out of her escrow and paycheck to pay for some damage to the truck. (Tinnon Tr. at 52:1–24.) Tinnon disagreed with Poskovic's decision to withhold her earnings to repair the truck. (*See id.* at 53:1–15.) This was Tinnon's last conversation with Poskovic. (*Id*.)

Approximately one week later, B H 92's owner called Tinnon. (*Id*. at 53:15–17.) He apologized for what had happened to Tinnon, told her "we don't do things like that here," and told her that if she came back, she would get her "full pay and whatever they owed [her]." (*Id*. at 54:7–15; *see also* Pltf. SOAF ¶ 36.) Tinnon contacted her counsel at the time and at counsel's direction, ceased all contact with B H 92. (Tinnon Tr. at 55:16–56:1.)

6

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552 (1986). When deciding whether there is a genuine dispute of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); *Weber v. Univs. Res. Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). At summary judgment, we do not "'judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact.'" *Torres v. Pfister*, Case No. 15 CV 11547, 2017 WL 3386120, at *1 (N.D. Ill. Aug. 7, 2017) (quoting *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009)).

There is a genuine issue for trial when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 334 (7th Cir. 2011) ("'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'") (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Torres*, 2017 WL 3386120, at *1 (quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014)); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury, or

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S. Ct. at 2512.

## ANALYSIS

Under the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. § 31105, it is unlawful for "[a] person" to "discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment," for, among other reasons, filing "a complaint…related to a violation of commercial motor vehicle safety or security regulation, standard, or order" or refusing to operate a vehicle because doing so would violate "a regulation, standard, or order of the United States related to commercial vehicle safety, health, or security." 49 U.S.C. § 31105(a)(1)(A)(i); 49 U.S.C. § 31105(a)(1)(B)(i). To maintain a claim under the STAA, an employee must show that: (1) she engaged in a protected activity within the meaning of the STAA; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Roadway Exp., Inc. v. U.S. Dep't of Labor*, 495 F.3d 477, 481–82 (7th Cir. 2007).

Plaintiff claims that B H 92, AP Express, and Poskovic violated the STAA because they discharged Tinnon after she reported (1) that she could not drive a company truck in violation of federal hours of service regulations, (2) that she would not falsify her driving records to make it seem like she was in compliance with those regulations, and (3) that she would not drive an unsafe truck that was in need of repair. (Compl. ¶ 1.) On August 29, 2019, we entered a default judgment against all three Defendants because none of them had answered Plaintiff's Complaint. (*See* Dkt. Nos. 14, 15, 23.) On October 1, 2019, B H 92 filed a motion to set aside the default judgment entered against B H 92 only. (*See* Dkt. No. 29.) We granted the motion on October 4,

8

2019. (*See* Dkt. No. 31.) To date, neither AP Express nor Poskovic has appeared, responded to Plaintiff's Complaint, or asked us to set aside the default judgment entered against them.

B H 92 argues that we should enter summary judgment against Plaintiff because B H 92 did not have an employment relationship with Tinnon, Plaintiff cannot prove that Tinnon engaged in protected activity under the STAA, Plaintiff cannot show that B H 92 caused Tinnon to suffer an adverse employment action, and Plaintiff cannot show that Tinnon suffered damages. (Motion at 4–14.)

## I. Whether B H 92 Was Tinnon's Employer

B H 92 first contends that it cannot be held liable under the STAA because B H 92 was not Tinnon's employer. According to B H 92, the undisputed record shows that AP Express and Poskovic hired Tinnon, paid Tinnon's wages and benefits, owned the truck that Tinnon drove, decided which routes Tinnon would drive, and terminated Tinnon. (Motion at 4–5.) Tinnon neither performed driving services for B H 92 nor had an employment agreement with B H 92, and B H 92 did not control or direct "the means and manner" of Tinnon's "driving services." (*Id*. at 5.) B H 92 further argues that its relationship with AP Express and Poskovic does not create a joint employer relationship over Tinnon because, among other things, "AP Express was solely responsible for paying its employees, for maintaining worker's compensation insurance, for fueling and maintaining the trucks used by its employees, and for scheduling and directing where employees operate." (*Id*.)

Plaintiff disagrees, arguing that B H 92 exercised control over various aspects of Tinnon's employment, including, but not limited to, recruitment, training, load dispatch, and truck maintenance. (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Opposition") (Dkt. No. 92) at 1–5.) Although Plaintiff states that there is a triable issue of fact

9

as to whether B H 92 was Tinnon's employer or joint employer, Plaintiff's argument only invokes a joint-employer theory. (*See id.* (setting forth the test for joint employer and explaining why B H 92 satisfies that standard).) Accordingly, we will analyze Plaintiff's arguments under that theory only. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (observing that parties waive "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority") (internal quotation marks and citation omitted); *Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008) (concluding that plaintiff had waived an argument where she had cited no legal authority to support it).

The STAA does not define what it means for a business to be a "joint employer." *See* 49 U.S.C. § 31105. Nor do the parties cite—or were we able to find—Seventh Circuit precedent interpreting that term within the context of the STAA. However, the U.S. Department of Labor Administrative Review Board, which is charged with issuing final agency decisions under the STAA, *see* Dept. of Labor Secretary's Order No. 1-2020 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board), 85 Fed. Reg. 13186 (Mar. 6, 2020), has suggested that joint employers may be liable for violations of the STAA in certain circumstances. *See, e.g., Myers v. AMS/Breckenridge/Equity Grp. Leasing 1*, ARB Case No. 10-144, ALJ Case Nos. 2010-STA-007, 2010-STA-008, 2012 WL 3637982, at *5 (ARB Aug. 3, 2012) (observing that "to the extent that there is 'joint employer liability' under STAA, it must be determined under the gloss of the statutory term 'person.'") Although Administrative Review Board decisions do not bind us, they are instructive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944) (observing that the "rulings, interpretations and opinions" of an administrative agency "while not controlling upon the courts…do constitute a body of experience and informed judgment to which courts and litigants may properly resort for

guidance"); *Chagoya v. City of Chicago*, 992 F.3d 607, 617 n. 22 (7th Cir. 2021) (noting that courts may consider the U.S. Department of Labor's "interpretive statements"); *Worcester v. Springfield Terminal Ry. Co.*, 827 F.3d 179, 183 (1st Cir. 2016) (finding an Administrative Review Board interpretation of a statute to be "persuasive.") (internal quotation marks and citations omitted). We will consider it, along with Seventh Circuit precedent concerning joint-employer liability in other labor law contexts, to determine whether there is a triable issue of fact here.

The Seventh Circuit has said that the "'joint-employer' language is designed to identify the business entities that control the employees' terms and conditions of employment." *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 810 (7th Cir. 2014). The issue of whether a business is a joint employer "is essentially a factual question." *G. Heileman Brewing Co. v. N.L.R.B.*, 879 F.2d 1526, 1531 (7th Cir. 1989). To determine whether a business is a joint employer, courts consider such factors as: "'(1) supervision of employees' day to day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions.'" *Whitaker*, 772 F.3d at 810 (quoting *DiMucci Constr. Co. v. N.L.R.B.*, 24 F.3d 949, 952 (7th Cir. 1994)).

This standard is consistent with the standard applied by the Department of Labor Administrative Review Board when adjudicating claims under the STAA. *See, e.g., Forrest v. Dallas & Mavis Specialized Carrier Co.*, ARB Case No. 04-052, ALJ Case No. 2003-STA-53, 2005 WL 1827747, at *3 (ARB July 29, 2005) (observing that an entity acts as an employer when it "exercise[s] control over, or interfere[s] with, the terms, conditions, or privileges of the complainant's employment.") Therefore, we consider whether B H 92 exerted control over the terms and conditions of Tinnon's employment.

After a careful review of the record, we conclude that there is a triable issue of fact as to whether B H 92 was a joint employer of Tinnon. Among other things, Plaintiff has provided evidence that B H 92 was involved in hiring Tinnon to drive a truck (*see, e.g.*, Pltf. SOAF ¶¶ 3–7), that B H 92 located a truck for her to drive (*Id*. ¶ 8; Tinnon Tr. at 29:6–30:7), that B H 92 told Tinnon which loads to pick up (*see* Pltf. Resp. SOF ¶ 15), and that B H 92 communicated with Tinnon when her truck broke down (*see, e.g.*, Tinnon Tr. at 40:16–18). Tinnon also testified that after Poskovic terminated her, the owner of B H 92 called her, apologized for what had happened, told her "we don't do things like that here," and offered that she could "come back." (Tinnon Tr. at 53:15–54:15.) B H 92's owner claimed that if Tinnon came back, she "would get [her] full pay and whatever they owed [her] . . . ." (*Id*. at 54:13–15.) Taken together, this evidence suggests that B H 92 may have had control over key terms and conditions of Tinnon's employment, including, but not limited to, hiring Tinnon, assigning Tinnon tasks, and compensating her for her work. *See, e.g., G. Heileman Brewing*, 879 F.2d at 1530–31 (observing that a business may be a joint employer where, among other things, it has the authority to hire employees and promulgate work assignments).

B H 92 argues that we should disregard statements by B H 92's owner because they are inadmissible hearsay. (*See* Reply at 1–3.) Although it is true that a party may not rely on inadmissible hearsay to oppose summary judgment, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009), statements made by B H 92's owner concerning Tinnon's employment at B H 92 likely constitute admissions by a party opponent that are treated as admissible nonhearsay. *See* Fed. R. Evid. 801(d)(2); *Jordan v. Binns*, 712 F.3d 1123, 1128–29 (7th Cir. 2013) (explaining the circumstances in which party admissions are admissible); *see also Johnson v. Vill. of Dolton*, 962 F. Supp. 2d 1026, 1032 (N.D. Ill. 2013) (concluding that statement by Village

Administrator, about a matter within the scope of his responsibilities in administering Village employees, was that of a party opponent, and therefore, admissible). Accordingly, we can consider statements by B H 92's owner in deciding this Motion.

Because we conclude there is a triable issue of fact as to whether B H 92 was Tinnon's joint employer, we turn to B H 92's next argument in support of summary judgment—that Tinnon did not engage in a protected activity under the STAA.

## II. Whether Tinnon Engaged in Protected Activity Under the STAA

Plaintiff alleges that Tinnon engaged in protected activity because she: (1) "refused to operate a commercial vehicle" when doing so would cause her to violate Department of Transportation hours of service regulations and (2) reported that her vehicle was in an unsafe operating condition and that she would run out of hours if she kept driving. (Compl. ¶¶ 1, 87.) However, in opposition to B H 92's Motion, Plaintiff abandons the refusal-to-drive theory, arguing only that his claim should survive because Tinnon complained about her vehicle's condition and that she might violate hours requirements. (*See* Opposition at 5–7.) For the purpose of this Motion, we will likewise treat Tinnon's complaints regarding her vehicle's condition and possible violation of hours regulations as the alleged protected activities at issue.

B H 92 advances two arguments as to why Tinnon's actions are not protected activities under the STAA. First, B H 92 argues that Plaintiff cannot prevail on his claim unless he can show that Tinnon's complaints were justified, *i.e.*, that Tinnon's truck was actually unsafe and/or that Tinnon would have actually run out of hours if she had kept driving. (Motion at 8–12.) Second, B H 92 argues that Plaintiff cannot use Tinnon's own testimony about a conversation with Poskovic as proof that she engaged in protected activity because that testimony is inadmissible hearsay. (Reply at 8.)

Activities protected by the STAA include, but are not limited to, complaining about safety issues. *See Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 263 (7th Cir. 2014); 49 U.S.C. § 31105(a)(1)(A). To prevail on a claim for retaliatory discharge based on a safety complaint, an employee need not prove that her complaint was accurate. *Id*. at 269. Rather, "an employee who files a reasonable safety complaint in good faith is protected…even when that complaint contains inaccurate information." *Id*. B H 92 does not dispute that Tinnon acted in good faith when she complained to Poskovic about her truck and that she was running out of hours. Accordingly, B H 92's first argument is without merit.

As for B H 92's second argument, Tinnon's testimony that she complained to Poskovic is not hearsay to the extent that Plaintiff is using it to show only that Tinnon made a complaint. *See, e.g., Downing v. Abbott Laboratories*, No. 15 C 05921, 2019 WL 4213229, at *3 (N.D. Ill. Sept. 5, 2019) (complaints were not hearsay when they were used to show that supervisor received them and that they affected supervisor's belief about employee's abilities—but not to show that the complained-of conduct was true); *Atkinson v. SG Ams. Sec., LLC*, No. 14 cv 9923, 2016 WL 7188163, at *7 n. 2 (N.D. Ill. Dec. 12, 2016) (complaints were not hearsay when they were offered to show that an employer received them rather than for their truth), *aff'd*, 693 F. App'x 436 (7th Cir. 2017); *Powell v. Ingalls Child Care Ctr.*, No. 14 CV 5925, 2015 WL 8013418, at *4 (N.D. Ill. Dec. 7, 2015) (concluding that defendant could introduce complaints for the non-hearsay purpose of showing their effect on plaintiff's supervisors but not to show that the complained-of conduct actually occurred). The truth of the matters Tinnon asserted in her complaint—that her truck was, in fact, unsafe and/or that she would have, in fact, run out of hours if she had kept driving—is not at issue. Instead, Plaintiff needs to only show that Tinnon complained to meet his burden at this stage, and Plaintiff has put forth evidence that Tinnon did

14

Case: 1:19-cv-01875 Document #: 96 Filed: 01/21/22 Page 15 of 18 PageID #:806

so. We therefore cannot enter summary judgment against Plaintiff on this basis. Thus, we next consider whether there is a triable issue of fact concerning whether Tinnon's protected activity caused B H 92 to take adverse action against her.

### III. Whether Tinnon Can Prove an Adverse Action by B H 92 or Causation

Plaintiff alleges that Tinnon suffered an adverse action by B H 92 because she was terminated after complaining about her truck's condition and the fact that she might exceed her hours. (Compl. ¶¶ 1, 87.) According to B H 92, Tinnon cannot show that B H 92 took an adverse employment action against her because it was not her employer, and Poskovic is the one who fired her. (Motion at 12.) Moreover, B H 92 claims that Tinnon has not produced any admissible evidence showing a causal link between a protected activity and her termination. (Reply at 9.)

Tinnon complained to Poskovic and B H 92 dispatch about her truck's condition. (*See, e.g.*, Tinnon Tr. at 45:1–8.) She also told Poskovic that she would exceed her hours if she continued driving. (*See id.* at 46:18–47:4.) The next day, Poskovic terminated her. (*Id*. at 51:3–8; Pltf. SOAF ¶ 35.) These facts, viewed in a light most favorable to Plaintiff, suggest that Tinnon was terminated because she engaged in protected activity. *See Casna v. City of Loves Park*, 574 F.3d 420, 422–23, 427 (7th Cir. 2009) (triable issue of fact where defendant terminated plaintiff one day after she complained); *Lavlani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001) ("When an adverse employment action follows close on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the *prima facie* case is typically satisfied.").

B H 92 first claims that it cannot be liable for Tinnon's termination because it was not her employer. (Motion at 12.) However, for the reasons set forth above, there is a triable issue of fact as to whether B H 92 was Tinnon's joint employer.

Therefore, we turn to B H 92's next argument—that B H 92 cannot be liable for Tinnon's termination because Poskovic—the owner of AP Express—terminated her. (Motion at 12.) In the context of other types of employment disputes, the Seventh Circuit has rejected the notion that when two companies are considered "joint employers," each is automatically liable for the other's actions. *See Whitaker*, 772 F.3d at 81–12. A joint employer may be liable for another's conduct where it participated in the violative conduct or failed to take corrective measures within its control. *See id.* (in the context of an employment discrimination claim, a joint employer could be liable where it "participated in the alleged discriminatory conduct or failed to take corrective measure within its control"). Here, there is no dispute that Tinnon was terminated by Poskovic, not B H 92. (Pltf. Resp. SOF ¶ 35.) And Plaintiff offers no explanation as to why we should attribute Poskovic's termination of Tinnon to B H 92. (*See* Opposition at 7–8.)

In particular, Plaintiff makes no attempt to show that Poskovic was acting as B H 92's agent when he terminated Tinnon. "Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004). "The test for agency is 'whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.'" *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009) (quoting *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998)). Parties must consent to a principal-agent relationship, and such a relationship may be created by conduct or contract. *Id.*

16

At multiple points in his Statement of Additional Facts and Opposition, Plaintiff refers to Poskovic as "Defendant's representative." (*See, e.g.,* Pltf. SOAF ¶¶ 32–35; Opposition at 8.) Yet Plaintiff has set forth no facts showing that Poskovic was empowered to act as B H 92's agent or representative with regard to firing employees. Indeed, Plaintiff does not direct us to any evidence that B H 92 and Poskovic had a principal-agent relationship whereby Poskovic could terminate Tinnon on B H 92's behalf. In Plaintiff's Statement of Additional Facts, Plaintiff offers that although Poskovic owned the truck that Tinnon drove and leased it to B H 92, Poskovic told Tinnon that the truck was "still part of the company." (Pltf. SOAF ¶ 25.) But these facts do not suggest that B H 92 gave Poskovic the authority to fire employees on its behalf.

Additionally, B H 92 has produced uncontroverted evidence that its relationship with Poskovic and AP Express was governed by the Lease and that it had "no connection to" either Poskovic or AP Express "other than the Lease." (*See* Hamulic Affidavit ¶ 7; Independent Contractor Equipment Lease Agreement (Dkt. No. 90-1, Ex. 1); Pltf. Resp. SOF ¶ 7.) Poskovic executed the Lease on behalf of AP Express as its "Owner." (Independent Contractor Equipment Lease Agreement at 16 (BH 92 – 000048).) In the Lease, B H 92 does not delegate to AP Express or Poskovic any authority to hire or fire B H 92's employees. (*See generally* Independent Contractor Equipment Lease Agreement.) Additionally, the Lease states that "B H 92 Trucking does not represent to anyone that [AP Express] is an employee or agent of B H 92 Trucking." (*Id*. ¶ 3(g).) Given the terms of the Lease and the fact that Plaintiff has not provided any evidence to suggest an agency relationship between Poskovic and B H 92 concerning the termination of B H 92's employees, no reasonable fact finder could conclude that Poskovic was acting as B H 92's agent or representative when he terminated Tinnon.

B H 92 could still be liable for Poskovic's actions as a joint employer if Plaintiff could show that B H 92 failed to take corrective measures within its control to remedy Poskovic's conduct. *See Whitaker*, 772 F.3d at 812. But Plaintiff is not able to show that either. To the contrary, Plaintiff claims that B H 92's owner took corrective measures after Poskovic's alleged violation by offering to reinstate Tinnon and pay her "whatever they owed [her]." (Tinnon Tr. at 53:15–54:15; Pltf. SOAF ¶ 36.) Accordingly, Tinnon has not offered any evidence that B H 92 either participated in the violative conduct or failed to take corrective measures within its control. For this reason, we grant B H 92's Motion. We need not reach B H 92's remaining argument concerning damages.

## CONCLUSION

For the foregoing reasons, we grant Defendant B H 92 Trucking, Inc.'s Motion for Summary Judgment. (Dkt. No. 89.) This civil case is terminated. It is so ordered.

                                                                                     Honorable Marvin E. Aspen
                                                                                     United States District Judge

Dated: January 21, 2022